IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHRIS PETTIT & ASSOCIATES, P.C.** | § | **LEAD CASE. NO 22-50591** |
| **CHRISTOPHER JOHN PETTIT** | § | **SECOND CASE NO. 22-50592** |
| | § | |
| | § | |
| | § | |
| | § | **CHAPTER 11** |
| **Jointly Administered Debtors** | § | **(Jointly Administered)** |
| | § | |
| **JAMES C. ARMSTRONG,** *et. al.* | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **WELLS FARGO BANK, N.A., WELLS** | § | **CIVIL ACTION NO. 5:24-CV-00177-FB** |
| **FARGO BANK WEST, AMERICAN** | § | **(Adversary No. 23-05088-CAG)** |
| **BANK, N.A., D/B/A TEXSTAR** | § | |
| **NATIONAL BANK A/K/A TEXSTAR** | § | |
| **BANK, TEXAS PARTNERS BANK** | § | |
| **D/B/A THE BANK OF SAN** | § | |
| **ANTONIO, WINTER PARK NATIONAL** | § | |
| **BANK, AND FROST BANK,** | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT WINTER PARK NATIONAL BANK'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT AND, IN THE
ALTERNATIVE, PLAINTIFFS' MOTION TO CONDUCT JURISDICTIONAL
DISCOVERY AND PLAINTIFFS' MOTION FOR LEAVE OF COURT TO FILE
AMENDED COMPLAINT**

Plaintiffs James C. Armstrong, *et al.,* respond as follows to Defendant Winter Park

National Bank's motion to dismiss Plaintiffs' third amended complaint:

1

## A. **This Court has specific jurisdiction over the Defendant Bank.**

*a. Background:*

1.    Plaintiffs have alleged a cause of action against the Bank for the intentional tort of knowing participation in a breach of fiduciary duty. In this regard, Plaintiffs have alleged that the debtors, Chris Pettit and Chris Pettit and Associates, maintained an IOLTA account with the Bank (account # *****2217) from April 2021 until January 2022. *(Adv. Doc. 109, ¶ 13; Exhibit "A")*. During that time, and knowing that the funds in the account were held in trust for the Plaintiffs, the Bank assisted and participated with Pettit and his law firm in breaching their fiduciary duties to the Plaintiffs. *(Id. at ¶¶ 24-29)*.

2. Defendant Bank has moved that the Court dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(2), alleging that it is a Florida corporation doing business exclusively in Florida, that it does not have an office in Texas, and that it has never done business in Texas. *(ECF 14, p. 4-5, 12)*. As a result, according to the Bank, the Court does not have personal jurisdiction over it, neither general nor specific. *(Id. at p. 15)*.

3. In support of its 12(b)(2) motion, the Bank claims that the 2217 account referenced in the complaint was *not* an IOLTA account under the Texas IOLTA program or under any IOLTA program. *(Id. at p. 5)*. Rather, the account was one of two commercial checking accounts opened by the Pettit law firm with the bank. *(Id. at p. 5, n.5)*. In addition, Pettit himself had a personal checking account with the Bank, along with four other commercial checking accounts, none of which was an IOLTA account. *(Id. at p. 5, n.5)*. These allegations are supported by the affidavit testimony of the Bank's CEO, David R. Dotherow. *(ECF 14, #2)*. If neither Pettit nor his law firm had an IOLTA account at the Bank, then not only did the Bank not participate in the breach

of a fiduciary duty, but neither could the Bank be said to have had such sufficient minimum contacts with the state of Texas as to give rise to personal jurisdiction over it. *(Id at p. 12-15).*

b. *Plaintiffs' burden of proof on the jurisdictional issue:*

4. Where there has not been any discovery on the jurisdictional issue, a plaintiff is only required to make a prima facie showing of jurisdiction to defeat the defendant's motion to dismiss. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). In reviewing the evidence presented by the parties, the court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in the plaintiff's favor. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). Additionally, a plaintiff should be allowed to conduct jurisdictional discovery, upon request, so long as the plaintiff's claim is not "clearly frivolous." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009). If a plaintiff presents factual allegations suggesting with reasonable particularity the possible existence of the requisite contacts between the defendant and the forum state, then the court should sustain the plaintiff's right to jurisdictional discovery. *Toys "R" Us., Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

c. *Specific jurisdiction when an intentional tort has been committed:*

5. The existence of specific jurisdiction is determined using a three-step analysis:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020)

6. The plaintiff bears the burden of establishing the first two prongs of the test, and if the plaintiff does that, then the defendant must make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

7. Under the first prong, the plaintiff must show that the defendant "purposefully directed" its activities toward the forum state or that it "purposefully availed" itself of the forum. The nature of the inquiry under this prong depends on the nature of the claim at issue. Where the claim involves allegations of an intentional tort, the court applies an "effects test." *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The "effects test" requires a showing that the defendant (i) committed an intentional tort, (ii) that was expressly aimed at the forum state, and (iii) that caused an injury within the forum state that the defendant should have reasonably anticipated. *Calder*, 465 U.S. at 789-790; *Mosseri*, 736 F.3d at 1356. Under the "effects test," a nonresident defendant's single tortious act can establish purposeful availment within the forum state without regard to whether the defendant had any other contacts with the forum state. *Mosseri*, 736 F.3d at 1356.

*d.  Plaintiffs have met their burden of making a prima facie showing of specific jurisdiction:*

8. Here, contrary to the Bank's sworn testimony, the debtor, Chris Pettit, filed a declaration and supplemental declaration in his bankruptcy proceedings averring that, upon a review of the books and records of Chris Pettit & Associates, that entity maintained an IOLTA account at Winter Park Bank, No. *****2217, from April 2021 to January 2022. *(Case No. 22-50591-cag, Docs. 236, 246; Exhibits "B," "C")*. The declarations were filed on July 27, 2022, and July 29, 2022, respectively.

4

9. In his deposition of October 14, 2022, Pettit elaborated on the nature of the account:

Q. Why did you establish the Winter Park IOLTA account?

A. Again, because I was considering retiring [in the] future in Florida and they had financed the Florida home. So I started a bank account there just to establish a business relationship with them.

Q. You – and you established specifically an IOLTA account?

A. No. It was a – it was a personal account originally, and then I opened a [sic] operating account, and then we opened an IOLTA account with them.

…

Q. Can you identify that document for us [referring to Exhibit No. 30]?

A. Yes, sir. It appears to be the trust account with Winter Park Bank.

Q. Okay. And I just want to see if I can find this. It looks like it's account number 217. There it is, account number –

A. Now I see it too. Yes, sir.

Q. – 217? Okay. Winter Park Bank is in Florida?

A. Yes, sir.

Q. And I think I heard you say that you do not have a license to practice in Florida?

A. Correct.

Q. Well, why – what prompted you to open this IOLTA account in Florida?

A. They had done the financing for the home in Florida, and I had talked to them about establishing a business relationship with them. They had told me that – as they were opening the account that they were applying for it to have Texas IOLTA status.

Q. Okay. "They" being Winter Park Bank?

A. Yes.

Q. Okay. Do you remember who was the person at Winter Park Bank that you may have had that discussion with?

5

A. There were several people I would have those discussions with. One would have been Tina. I forget her last name. The other would be David, who was president of the bank.[1]

*(Exhibit "D," p. 343, 352-353).*

10. Consistent with the above testimony, exhibit No. 30 shows that the referenced account was held by Chris Pettit & Associates, PC, and was identified as a "trust account." *(Exhibit "D," attached exhibit "30").*

11. To hold IOLTA funds, a bank must be an "eligible institution." This requires, first, that the bank and attorney wishing to open the IOLTA account each complete an IOLTA Notice to Financial Institution form and mail or fax it to the Texas Access to Justice Foundation in Austin. *(Exhibit "E," p. 5, 12).* Participation in the IOLTA program is voluntary, and the decision on whether or not the institution will be an eligible institution is made by the Foundation. *(Exhibit "F," Rule 7).* As an eligible institution, a bank is required to pay a certain minimum interest rate on its IOLTA accounts, to remit on at least a quarterly basis to the Foundation interest earned on the account, and to transmit to the Foundation and depositing attorney with each remittance a statement containing certain information about account activity. *(Exhibit "F," Rule 8).* Setting up a Texas IOLTA account is often a business decision used to attract related, non-IOLTA business, as occurred in this case. *(Exhibit "E," p. 2).* It can increase the financial institution's exposure in the state of Texas and, hopefully, the amount of business it does with Texas attorneys and their law firms. In this case, the Defendant Bank voluntarily completed these steps and became an eligible institution approved by the Texas Access to Justice Foundation. *(Exhibit "G," p. 6).*

---

[1] This would appear to be the same David Dotherow who testified by affidavit in support of Winter Park's motion to dismiss and who denied that an IOLTA account had ever been opened at the bank. *(ECF 14, #2, ¶21).*

12. With this evidence in mind, it becomes clear that the Defendant Bank directed its activities toward the forum state as required by the first prong of the "specific jurisdiction" test. Applying the "effects test" to that prong, Defendant Bank is alleged to have committed an intentional tort (i.e., knowing participation in the breach of a fiduciary duty) in connection with the IOLTA account. These activities were directed toward the state of Texas. The account in question was a Texas IOLTA account set up by a Texas attorney and a Texas law firm. The primary practice areas for Pettit and his law firm were personal injury and elder law. *(Exhibit "H")*. This meant that the funds going into the IOLTA account came from personal injury cases arising in Texas and involving Texas citizens. This meant also that the wills the firm prepared and probated involved the disposition of personal and real property belonging to Texas citizens, much of which would have been located within the state. Total funds deposited into and withdrawn from the account during the short time that it was opened exceeded $12.7 million. *(Exhibit "I")*. By involving itself in these activities, the Defendant Bank made a deliberate decision to direct its activities toward the forum state. Given the nature of the assets involved, the Defendant Bank should have reasonably anticipated that any injuries resulting from its conduct with regard to the IOLTA account would have been suffered in the forum state where the majority of the persons to whom the IOLTA funds belonged resided.[2]

13. Plaintiffs have also made a prima facie showing of the remaining two prongs of the specific jurisdiction test. Their intentional tort cause of action arose out of or related to the Defendant Bank's forum-related activities (i.e., assisting Pettit and his law firm in breaching

---

[2] Generally, a plaintiff sustains an economic injury where he or she resides. *Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492, 498 (5th Cir. 2024). In this case, 168 of the 200 claimants listed in the third amended complaint reside in Texas, meaning that the vast proportion of the damages sustained in this case were sustained in Texas.

their fiduciary duty to their Texas clients with respect to client funds deposited in the Texas IOLTA account). And the exercise of jurisdiction over the Defendant Bank is fair and reasonable. The Defendant Bank's relation with the forum state arose out of contacts that the Defendant Bank itself created with the forum state. Those contacts were not just hoisted upon it. Further, by becoming an eligible institution for the deposit of Texas IOLTA funds seeking to expand its brand in the state of Texas, the Defendant Bank established its contacts directly with the forum state and not just with the Plaintiffs or the Pettit law firm. Since the Defendant Bank had meaningful contacts with the state of Texas, the exercise of jurisdiction over the Bank would be fair and reasonable.

14. As the preceding discussion indicates, Plaintiffs have presented factual allegations suggesting the possible existence of the requisite minimum contacts between the Defendant Bank and the state of Texas. Should the Court conclude that the Plaintiffs have failed to make a prima facie showing of jurisdiction, Plaintiffs request that they be allowed to conduct jurisdictional discovery into the nature of all accounts set up by Chris Pettit and his law firm with the Defendant Bank. As the above discussion shows, Plaintiffs' jurisdictional claims are not "purely frivolous," and thus jurisdictional discovery would be appropriate.

### B. Plaintiffs have stated a claim under Rule 12(b)(6) for knowing participation in a breach of fiduciary duty.

*a. Background:*

15. Defendant Bank next moves to dismiss Plaintiffs' claim against it under Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiffs have failed to state a claim against it upon which relief can be granted. *(ECF 14, p. 15).* In particular, the Defendant Bank alleges that Plaintiffs have failed to plead sufficient facts to state a claim for *knowing* participation by the

Bank in the alleged breach of fiduciary duty perpetrated by Pettit and his law firm against the Plaintiffs. *(Id. at p. 16)*. Defendant Bank also claims that Plaintiffs have failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to state "with particularity" the circumstances constituting fraud in cases where such a claim has been made. *(Id. at p. 19-20)*. Both arguments are without merit.

16. "A pleading that states a claim for relief must contain …a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the …claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081(2007) (quoting *Cohley v. Gibson*, 355 U.S. 41, 47 (1957)). As to the factual allegations pled, they must be such that when taken as a whole, they render the plaintiff's entitlement to relief plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Neukranz v. Conestoga Settlement Servs., LLC*, No. 3:19-CV-1681-L, 2022 WL 19518462, at *10 (N.D. Tex. Nov. 23, 2022). The plausibility standard is not akin to a probability requirement, however, and "a well-pleaded complaint may proceed, even if it strikes the savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556). The degree of specificity needed to establish plausibility and fair notice will depend upon the context of the case. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

17. In evaluating the sufficiency of a pleading for 12(b)(6) purposes, the court cannot look beyond the pleadings.[3] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). It must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.* "[I]f … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." FED. R. CIV. P. 12(d).

*b.   Plaintiffs have pled sufficient facts to show actual knowledge on the part of the Defendant Bank:*

18. As to the actual knowledge component of Plaintiffs' claim, Defendant Bank argues that Plaintiffs have failed to allege any facts showing: (i) that the Bank had actual knowledge of the fiduciary relationship between Pettit and his law firm on the one hand, and the Plaintiffs on the other; (ii) that the Bank had actual knowledge of the alleged breach of fiduciary duty by Pettit and his law firm toward any Plaintiff; and (iii) that the Bank had actual knowledge of its own participation in the alleged breach of fiduciary duty toward any Plaintiff. *(ECF 14, p. 17).* Defendant Bank goes on to argue that Plaintiffs have only identified certain "red flags" arising from Pettit's mishandling of his account with the Bank. *(Id. at p. 18).* "Red flags" do not show actual knowledge on the part of the Bank, however.  At best, "red flags" only show constructive knowledge ("should have known"), and constructive knowledge is insufficient for purposes of pleading a cause of action against a third party for knowing participation in the breach of a fiduciary duty. Plaintiffs will address each of the alleged pleading defects in due order.

---

[3] The Court may consider attachments to the complaint when ruling upon a motion to dismiss. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). It may also consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

19. With regard to the first alleged pleading defect (i.e., the Bank's actual knowledge about the fiduciary relationship between Pettit and the Plaintiffs), Plaintiffs' complaint alleged the following:

(a) Pettit and his law firm maintained an IOLTA account (*****2217) under the Texas IOLTA program with the Defendant Bank from April 2021 to January 2022. *(Adv. Doc. 109, ¶13; Exhibit "A")*.

(b) IOLTA funds are held in trust by the attorney or law firm that set up the account and belong *exclusively* to the clients on whose behalf the funds were deposited. *(Id. at ¶12)*.

(c) The Defendant Bank was an eligible institution under the Texas IOLTA program, which meant that the Bank had to meet certain requirements in its handling of the account, including certain reporting requirements to the Texas Access to Justice Foundation. *(Id. at ¶16)*.

(d) Since the Defendant Bank *knew* that the account set up with it by Pettit and his law firm in April 2021 was an IOLTA account, the Defendant Bank *knew* that the funds deposited in the account were held in trust. *(Id. at ¶15)*. Accordingly, Plaintiffs have pled facts sufficient to show that the Defendant Bank had knowledge of the fiduciary relationship between Pettit and his law firm on the one hand, and the Plaintiffs on the other hand.

20 As to the Bank's actual knowledge of Pettit's and his law firm's breach of fiduciary duty, Plaintiffs' complaint alleged the following:

(a) Defendant Bank was an eligible institution under the Texas IOLTA program, which required that it abide by certain requirements. *(Adv. Doc. 109, ¶16; Exhibit "A")*. Reasonable fees and service charges associated with the IOLTA account were to be deducted from interest and dividends earned on the account but *not* from the IOLTA principal. *(Id.)*. Non-sufficient

funds (NSF) fees could only be charged to the attorney or law firm that set up the account, but *not* to the IOLTA principal or the IOLTA interest. *(Id.)*. Funds belonging to the attorney or law firm that set up the account could *not* be deposited in the account (with the exception of funds reasonably sufficient to pay for fees or obtain a waiver of fees or to keep the account open), meaning that there could be no commingling of funds, and that the funds in the accounts belonged exclusively to the clients. As one can see, the Defendant Bank was required to monitor activity on the IOLTA account to a greater degree than it normally would with regard to regular commercial accounts.   Since the Defendant bank had voluntarily chosen to be an eligible institution under the Texas IOLTA program (and therefore had effectively agreed to abide by the Texas Access to Justice monitoring requirements), it is reasonable to assume for 12(b)(6) purposes that the Bank had in place the requisite systems that allowed it to monitor IOLTA account activity as required by the Texas IOLTA program.

(b) The Defendant Bank was required to meet certain reporting requirements under the Texas IOLTA program. *(Id. at ¶17)*. It was required to accompany each IOLTA remittance with a statement showing the name of the attorney or law firm with respect to which the remittance was sent, the rate of interest attributable to the IOLTA account, the amount and type of fees and service charges deducted from the account, and the average account balance for the account during the period for which the report was made. *(Id. at ¶17)*. This would mean that in meeting its routine reporting requirements under the Texas IOLTA program, the Bank had to regularly apprise itself of any overdrafts to the IOLTA account. It also meant that the Bank had to set up a system that ensured that the fees associated with those overdrafts were charged to Pettit and his law firm and not to the clients whose funds had been deposited in the account.

(c) Even though the Defendant Bank knew that the funds held in the IOLTA account were held in trust for the clients on whose behalf they had been deposited (with limited exceptions), and even though the Defendant Bank had in place a system that allowed it to monitor account activity so as to remain in compliance with Texas IOLTA requirements, the Bank nevertheless allowed Pettit and his firm to pay personal and operating expenses out of the account (despite the prohibition against commingling), including monthly home mortgage expenses, credit card bills, etc. *(Id. at ¶26).* These were not "red flags," signifying activity about which the Bank should have known but did not. These were account activities violative of the Texas IOLTA program and about which the Bank did know, given the Bank's duty to monitor the account in order to meet its operating and reporting requirements under the program. Accordingly, the Defendant Bank had actual knowledge that Pettit and his law firm had breached their fiduciary duty to the Plaintiffs in their mishandling of the IOLTA account.

21. The Defendant Bank cites *Perlman v. Wells Fargo Bank, N.A.*, 559 F. Appx. 988 (11th Cir. 2014), for the proposition that a multitude of atypical transactions and procedural oddities associated with a depositor's use of an account falls short of constituting actual knowledge that the depositor was engaged in fraudulent activity. *(ECF 14, p. 18-19)*. The *Perlman* case, however, involved four accounts (a payroll account, a wire account, a deposit account, and a checking account), none of which was an IOLTA account. *See Perlman*, 559 Fed. Appx. at 990. In fact, not a single case cited by the Defendant Bank in its discussion of "red flags" and their relationship to actual knowledge involved an IOLTA account.

22. Unlike the cases cited by the Defendant Bank, however, *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1337 (S.D. Fla. 2014), did involve an IOLTA account. There, as stated in

13

the pleadings, the defendant bank had an agreement with the New Jersey bar to report overdrafts on attorney trust accounts. *Id.* at 1341. Despite the agreement, the bank allegedly allowed the attorney who set up the trust accounts to overdraw the accounts by honoring withdrawals and transfers from the accounts with insufficient funds. *Id.* at 1341. The bank allegedly knew that such conduct was a violation of state bar rules and allegedly knew also that it was supposed to report such conduct to the state bar office of attorney ethics but failed to do so. *Id.* at 1341. Giving the plaintiff the benefit of all reasonable inferences from the pleadings, as required under a 12(b)(6) analysis, the court found it plausible for 12(b)(6) purposes to assume from these pleadings that the bank had in place a system to detect overdraws for state bar reporting purposes, and that therefore the bank had to have had actual knowledge of the overdraws. *Id.* at 1341-1342. Since multiple overdraws on an IOLTA account give rise to a strong inference of wrongdoing on the part of the attorney setting up the account, the court concluded that the pleadings showed for 12(b)(6) purposes that the bank had actual knowledge of the attorney's breach of fiduciary duty. *Id.* at 1342 n.4; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 289 (2d Cir. 2006)("[T]he fact that [the attorney] was overdrawing his fiduciary accounts constitute[s] strong evidence that he was, at the very least, mishandling his clients' funds."); Rule 17-204, Committee Commentary, NMRA (NEW MEXICO RULES ANNOTATED) ("The overdraft notification provisions… of this rule require that all overdrafts on trust accounts be reported by financial institutions to the Office of Disciplinary Counsel simultaneously with notice to the attorney of the overdraft…The overdraft notification provisions in this rule are intended to help prevent misappropriation by providing a method for early warning of

improprieties in the handling of attorney trust accounts; the two most obvious indications of possible misappropriation are a trust account overdraft or a dishonored trust account check.").

23. Here, giving Plaintiffs the benefit of all reasonable inferences from their pleadings, the pleadings show for 12(b)(6) purposes that the Defendant Bank knew of the multiple overdrafts on the IOLTA account – after all, the Bank charged the account holder for each overdraft (in addition to having certain systems in place to monitor account activity so that it could meet its IOLTA reporting requirements). Given that multiple overdrafts constitute strong evidence of attorney breach of fiduciary duty, it follows that the Plaintiffs' pleadings show for 12(b)(6) purposes that the Bank had actual knowledge of that breach.[4]

24. Finally, the Bank claims that the pleadings fail to show that the Bank had actual knowledge of its own participation in the breach of fiduciary duty. Yet, as discussed above, not only did the Defendant Bank know about Pettit's and his law firm's breach of fiduciary duty, it facilitated that breach by allowing them to continue prohibited activities despite its awareness of the nature of the activities (e.g., commingling of funds, repeated overdraws on the IOLTA account, payment of operating expenses using client trust funds, etc.). In sum, the pleadings state sufficient facts for 12(b)(6) purposes to show that the Bank had actual knowledge of its own participation in the breach of fiduciary duty.

---

[4]  The September 30, 2021, statement for the Pettit law firm's IOLTA account showed that as of that date the law firm had incurred $840 in overdraft fees. *(Exhibit "D," attached exhibit "30")*. It also appears from the bank statement that the Bank charged an insufficient funds fee of $35 per overdraft. *(Id. at 00019, 00024, 00025)*. If this is correct, then that would mean that the Pettit law firm had incurred 24 overdraft charges in the five months that the account had been in existence. Since the Bank knew about the overdraft charges it was imposing on the account and the number of overdrafts that had occurred, it would have also known about the breach of fiduciary duty that was occurring in relation to that account.

*c. Plaintiffs have not stated a claim for fraud, and therefore Rule 9(b) does not apply:*

25.     Defendant Bank also argues that the Plaintiffs have failed to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[5] According to the Defendant Bank, Rule 9(b) prohibits group pleading and requires that the circumstances of an alleged fraud be pleaded with specificity as to the people, actions, time frames, amounts, and locales. *(ECF 14, p.16).* Defendant Bank claims that the Plaintiffs failed to meet this specificity requirement in their pleadings by failing to link any specific Plaintiff to the IOLTA account in question and by failing to identify a single transaction in the IOLTA account involving a breach of fiduciary duty in which the Bank participated.[6] *(Id. at p. 19-20).*

26. In support of its argument, the Bank cites *Neudranz v. Conestoga Settlement Servs., LLC,* 2022 WL 19518462. *(ECF 14, p.16).* In that case, however, not only did the plaintiffs plead that the defendant owed them a fiduciary duty, but they also pled that it had breached that fiduciary duty by "participating in a scheme to defraud [them]....and failing to disclose the fraud." *Id.* at *17. In other words, the plaintiffs' claim was not a simple breach of fiduciary duty claim but rather was predicated on the defendant's fraudulent conduct. In *Litson-Gruenber v. JP Morgan Chase & Co.*, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009), also cited by the Defendant Bank *(ECF 14, p. 16)*, the plaintiff based her breach of fiduciary duty claim and claim for constructive fraud on the bank's alleged participation in a Ponzi scheme, which itself is a fraudulent activity. In both cases, the court noted that generally a breach of fiduciary duty claim need only meet the pleading requirements of Rule 8(a). *Nuekranz*, 2022 WL 19518462, at *17;

---

[5] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P.  9(b).
[6] On the contrary, Plaintiffs petition *did* identify transactions involving breach of fiduciary duty in which the Bank participated, i.e., the multiple overdrafts over an extended period of time on the IOLTA account by Pettit and his law firm about which the Bank knew and which the Bank allowed.

*Litson-Gruenber*, 2009 WL 4884426, at *4. It is only when the breach of fiduciary duty claim is premised on fraudulent conduct that the plaintiff must meet the heightened pleading requirements of Rule 9(b). *Nuekranz*, 2022 WL 19518462, at *17; *Litson-Gruenber*, 2009 WL 4884426, at *4. Here, there are no allegations of fraud in the Plaintiffs' most recently amended complaint, and the Defendant Bank has not identified any.[7] Plaintiffs have simply stated a claim against the Defendant Bank for knowing participation in a breach of fiduciary duty based on Pettit's and his law firm's conduct. Nowhere do the Plaintiffs describe any of the conduct that occurred as being fraudulent, neither that of Pettit and his law firm nor that of the Defendant Bank. As a result, Plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b), and their alleged failure to do so does not constitute a basis for dismissing their claim.

27. In the alternative, should the Court be inclined to grant the Defendant Bank's motion to dismiss under Rule 12(b)(6), Plaintiffs request leave of Court pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend their complaint prior to entry of the order.

## C. **Prayer**

28. For the above reasons, Plaintiffs James C. Armstrong, *et al.*, request that the Court deny Defendant Winter Park National Bank's Motion to Dismiss Third Amended Complaint in all things. In the alternative, should the Court find that Plaintiffs have failed to make a prima facie showing of jurisdiction, Plaintiffs request that the Court find that their jurisdictional claims are not "purely frivolous," and that they be allowed to conduct limited jurisdictional discovery on the nature of all accounts that the Debtors Chris Pettit and Chris Pettit and Associates opened

---

[7] The elements of fraud are: (i) a material misrepresentation was made; (ii) the representation was false; (iii) when the representation was made, the speaker knew it was false or made the statement recklessly without knowledge of the truth; (iv) the speaker made the representation with the intent that the other party should act on it; (v) the party acted in reliance on the representation; and (vi) the party thereby suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001).

and maintained with the Defendant Bank at all times. Pleading further in the alternative, and in the event the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted, Plaintiffs request that the Court grant leave to amend their most recently amended complaint prior to entry to any order of dismissal.  Plaintiffs request such further general relief to which they may be justly entitled.

Respectfully submitted,

LAW OFFICES OF DAVID MCQUADE LEIBOWITZ, P.C.
517 Soledad Street
San Antonio, Texas  78205
T:  (210) 225–8787
F:  (210) 225–2567
E:  david@leibowitzlaw.com

_____
DAVID MCQUADE LEIBOWITZ
State Bar No. 12179800
ATTORNEYS FOR PLAINTIFFS

-   AND   -

Leif M. Clark
LEIF M CLARK CONSULTING PLLC
1105 Bonner
Houston, Texas 77007
(210) 663-5183
E: lmclark@leifmclark.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify the above and foregoing document filed through the ECF system was (i) sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 30. 2024.

*/s/  David  McQuade  Leibowitz*
David McQuade Leibowitz

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHRIS PETTIT & ASSOCIATES, P.C.** | § | **LEAD CASE. NO 22-50591** |
| **CHRISTOPHER JOHN PETTIT** | § | **SECOND CASE NO. 22-50592** |
| | § | |
| | § | |
| | § | |
| | § | **CHAPTER 11** |
| **Jointly Administered Debtors** | § | **(Jointly Administered)** |
| | § | |
| **JAMES C. ARMSTRONG**, *et. al.* | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **WELLS FARGO BANK, N.A., WELLS** | § | **CIVIL ACTION NO.  5:24-CV-00177-FB** |
| **FARGO BANK WEST, AMERICAN** | § | **(Adversary No. 23-05088-CAG)** |
| **BANK, N.A., D/B/A TEXSTAR** | § | |
| **NATIONAL BANK A/K/A TEXSTAR** | § | |
| **BANK, TEXAS PARTNERS BANK** | § | |
| **D/B/A THE BANK OF SAN** | § | |
| **ANTONIO, WINTER PARK NATIONAL** | § | |
| **BANK, AND FROST BANK,** | § | |
| **Defendants.** | § | |

## DECLARATION OF DAVID MCQUADE LEIBOWITZ

I, David McQuade Leibowitz, hereby declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1.      I am over the age of 21 years and am legally competent to make this declaration. I have personal knowledge of and am familiar with the matters set forth in this declaration, and all of the facts and statements contained herein are true and correct.

2.      I am licensed to practice law in the State of Texas and regularly practice in the state district courts of Bexar County, Texas.

3.      Attached hereto as Exhibit "E" is a true and correct copy of the "Interest on Lawyers' Trust Accounts (IOLTA) Guidebook for Financial Institutions" obtained from the Texas Access to Justice Foundation website at teajf.org/financial_institutions/guidebook.aspx.

4.      Attached hereto as Exhibit "F" is a true and correct copy of the "Rules Governing the Operation of the Texas Access to Justice Foundation" obtained from the Texas Access to Justice Foundation website at teajf.org/about_tajf/governing_rules.aspx.

5.      Attached hereto as Exhibit "G" is a true and correct copy of the "Texas IOLTA Program Prime Partners and Eligible Institutions" obtained from the Texas Access to Justice Foundation website at teajf.org/financial_institutions/docs/Eligible_Banks_List_Master.pdf.

6.      Attached hereto as Exhibit "H" is a true and correct copy of a document obtained from the State Bar of Texas website under the tab "Find a Lawyer" using the name "Christopher Pettit."

7.      Attached hereto as Exhibit "I" is a true and correct copy of the Deposit and Withdrawal Summary for Winter Park Bank prepared by FORVIS, LLP, a forensic accounting firm, for the Chapter 11 Trustee in the bankruptcy proceedings of Christopher John Pettit and Chris Pettit & Associates, P.C.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _____30th_____ day of July 2024.

_____

DAVID MCQUADE LEIBOWITZ

2