# EXHIBIT F

# RULES GOVERNING THE OPERATION OF THE TEXAS ACCESS TO JUSTICE FOUNDATION

(Amended May 22, 1991)
(Rules 4 & 6 amended January 25, 1999)
(Rule 11 amended March 20, 2002)
(Amended November 22, 2004)
(Amended December 18, 2006)
(Amended January 13, 2009)
(Amended June 15, 2021)

1. Establishment of the Texas Access to Justice Foundation.

    The Texas Access to Justice Program ("the Program"), Article XI of the State Bar Rules Adopted and promulgated by the Supreme Court of Texas by Order dated April 30, 1984, shall be administered by the Texas Access to Justice Foundation (the "Foundation"), a Texas Non-Profit Corporation.

2. Articles of Incorporation and Bylaws.

    The Articles of Incorporation and Bylaws of the Foundation shall be as set forth in Attachments 1 and 2, respectively, hereto.

3. Directors of the Foundation.

    Directors of the Foundation shall be appointed and their terms of office fixed as set forth in Attachment 2. The initial directors of the Foundation are named in Attachment 1.

4. Deposit of Certain Client Funds.

    An attorney licensed by the Supreme Court of Texas, receiving in the course of the practice of law in this state, client funds that are nominal in amount or are reasonably anticipated to be held for a short period of time, must establish and maintain a separate interest or dividend-bearing insured depository trust account at an eligible institution and deposit such funds in the account. "Interest or dividend-bearing insured depository trust account" means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a money market fund at an eligible institution as defined in Rule (7). A daily financial institution repurchase agreement must be fully collateralized by, and an open-end money market fund must consist solely of United States Government Securities. A daily financial institution repurchase agreement may be established only with an eligible institution that is deemed to be "well capitalized" or "adequately capitalized" as defined by applicable federal statutes and regulations. An open-end money market fund must hold itself out as a money market fund as defined by applicable federal statutes and regulations under the Investment Company Act of 1940 and have total assets of at least $250,000,000.

    The funds covered by this rule shall be subject to withdrawal upon request and without delay. All IOLTA-eligible client funds may be deposited in a single unsegregated account. Attorneys who practice in a law firm or for a professional corporation may utilize the interest-bearing trust account of such firm or corporation to comply with Rule 4. No funds belonging to the attorney or law firm, except funds reasonably sufficient to pay for fees or obtain a waiver of fees or to keep the account open, may be deposited in such an account. The interest earned on the account shall be paid in accordance with and used for the purposes set forth in these Rules. The Foundation shall hold the entire beneficial interest in the interest

1

earned. Funds to be deposited under these Rules shall not include those funds evidenced by a financial institution instrument, such as a draft, until the instrument is fully credited to the financial institution in which the account is maintained. The term "draft" as herein used is defined in Section 3.104 (b) (1) of the Texas Business and Commerce Code. A draft or similar instrument need not be treated as a collected item unless it is the type of instrument which the financial institution generally treats as a collected item. Nothing in this or any other of these Rules prohibits the deposit of client funds into a general account or changes the legal relationship between depositor and financial institution from that established by contract or by applicable state and federal law.

4A. Attorneys Who Do Not Handle Client Trust Funds.

Licensed attorneys who do not handle client trust funds are not required to establish an IOLTA account. Such attorneys must nevertheless advise the Foundation during the annual IOLTA compliance process that they do not handle client trust funds.

4B. Accounts Unable to Generate Net Interest.

Licensed attorneys who maintain client trust funds that are nominal in amount or are reasonably anticipated to be held for a short period of time must attempt in good faith to locate an interest bearing account that would generate interest greater than service charges. If such an account cannot be located, the attorney must notify the Foundation during the annual IOLTA compliance process. Such attorney is required to maintain a non-interest bearing client trust account for such funds.

5. Annual Notice to Foundation.

Licensed attorneys must advise the Foundation annually either electronically or in writing as to their IOLTA status as provided in Rule 23.

5A. Notice to Foundation of Change in Status.

Licensed attorneys must notify the Foundation either electronically or in writing within thirty (30) days of any change in IOLTA status.

5B. Notice to Foundation of Closed Accounts.

An attorney, law firm, or professional corporation engaged in the practice of law and maintaining accounts provided for in these Rules must notify the Foundation either electronically or in writing within thirty (30) days of the closing of such account(s).

6. Funds Eligible for the Program.

The funds of a particular client are nominal in amount or held for a short period of time, and thus eligible for use in the Program, if such funds could not reasonably be expected to earn interest for the client or if the interest which might be earned on such funds is not likely to be sufficient to offset the cost of establishing and maintaining the account, service charges, accounting costs and tax reporting costs which would be incurred in attempting to obtain interest on such funds for the client. Also to be considered are the nature of the proceeding or transaction involved and the likelihood of delay in the need for such funds in such proceeding or transaction. The attorney, law firm, or professional corporation should exercise good faith judgment in determining initially whether client funds should be included in the Program and should review at reasonable intervals whether changed circumstances require further action with respect to such funds.

7. Accounts to be Maintained at Eligible Institutions.

An Account established at an eligible institution pursuant to Rule 4 shall be a trust account from which withdrawals or transfers may be made on demand (subject only to any notice period which the financial institution is required to reserve by law or regulation) established in any bank, savings bank, credit union, savings and loan association authorized by federal or state law to engage in business in Texas, which is insured by the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund, or an investment company which is registered with the Securities & Exchange Commission and the State Securities Commission (as may be required). The determination of whether or not an institution is an eligible institution and whether it is meeting the requirements of this rule shall be made by the Texas Access to Justice Foundation, which must maintain a current list of eligible institutions on its website. Participation by banks, savings and loans associations, credit unions, and investment companies in the IOLTA Program is voluntary. Effective, March 1, 2007, attorneys may not maintain an IOLTA trust account at a financial institution which does not meet the requirements of this rule and is therefore not an eligible institution. An eligible institution that elects to offer and maintain IOLTA accounts is one that meets the requirements of this rule, including the following:

(a) The eligible institution shall pay no less on its IOLTA accounts than the highest interest rate or dividend generally available from the institution to its non-IOLTA customers when the IOLTA account meets or exceeds the same minimum balance or other eligibility qualifications on its non-IOLTA accounts, if any. In determining the highest interest rate or dividend generally available from the institution to its non-IOLTA customers, an eligible institution may consider, in addition to the balance in the IOLTA account, factors customarily considered by the institution when setting interest rates or dividends for its non-IOLTA customers; provided, however, that such factors shall not discriminate between IOLTA accounts and non-IOLTA accounts, nor shall such factors include or consider the fact that the account is an IOLTA account. An eligible institution will satisfy these requirements if it pays a qualifying rate on IOLTA accounts or a qualifying account product:

1) The eligible institution may establish the IOLTA account as a qualifying higher rate product, including tiered interest rate checking accounts and a checking account with an automated sweep account that provides a mechanism for the overnight investment of balances in the IOLTA account in an interest-bearing or dividend-bearing account that is a daily financial institution repurchase agreement or a money-market fund.

2) An eligible institution may choose to pay the higher interest or dividend rate on an IOLTA checking account in lieu of establishing it as a qualifying higher rate product.

3) An eligible institution may choose to pay a rate equal to the greater of 0.65% or 65% (the "index") of the federal funds target rate (the "benchmark") as of the first business day of the IOLTA remitting period, which rate is deemed to be net of allowable reasonable fees, on an IOLTA checking account. The index and benchmark are determined periodically, but not more frequently than every six months, by the Foundation to reflect an overall comparable rate for the Texas IOLTA

3

Program. When applicable, the Foundation will express its benchmark in relation to the Federal Funds Target Rate.

4) A yield specified by the Foundation, if the Foundation so chooses, which is agreed to by the financial institution. The qualifying yield would be in effect for and remain unchanged during a period of no more than twelve months from the inception of the agreement between the financial institution and the Foundation.

(b) Nothing in this rule shall preclude an eligible institution from paying a higher interest rate or dividend than described above or electing to waive any fees and service charges on an IOLTA account.

(c) Interest and dividends shall be calculated in accordance with the eligible institution's standard practices for non-IOLTA customers.

(d) Allowable reasonable fees are the only fees and service charges that may be deducted by an eligible institution from interest earned on an IOLTA account. Allowable reasonable fees may be deducted from interest or dividends on an IOLTA account only at the rates and in accordance with the customary practices of the eligible institution for non-IOLTA customers. No fees or service charges other than allowable reasonable fees may be assessed against the accrued interest or dividends on an IOLTA account. Any fees and service charges other than allowable reasonable fees shall be the sole responsibility of, and may only be charged to, the attorney or law firm maintaining the IOLTA account.

8. Directions to the Eligible Institution.

The eligible institution shall be directed by the attorney, law firm or professional corporation establishing the account:

(a) To remit, at least quarterly, interest earned on the average daily balance in the account net of allowable reasonable fees, if any, to the Foundation. "Allowable reasonable fees" for IOLTA accounts are per check charges, per deposit charges, a fee in lieu of a minimum balance, federal deposit insurance fees, sweep fees, and a reasonable IOLTA account administrative or maintenance fee. All other fees are the responsibility of, and may be charged to, the lawyer maintaining the IOLTA account. Fees or charges in excess of the interest or dividends earned on the account for any month or quarter shall not be deducted from interest or dividends earned on other IOLTA accounts or from the principal of the account.

(b) To transmit to the Foundation with each remittance a statement showing the name of the attorney, law firm or professional corporation with respect to which the remittance is sent, the rate or rates of interest attributable to each IOLTA account, the amount and type of fees and service charges deducted, if any, and the average account balance for the account during the period for which the report is made and such other information as is reasonably required by the Texas Access to Justice Foundation.

(c) To transmit to the depositing attorney, law firm or professional corporation at the same time a report is sent to the Foundation, a report in accordance with normal procedures for reporting to depositors.

9. Organizations Eligible for Grants.

   The Foundation shall make grants to organizations, not individuals. Prior to making its first grant of funds, the Board of Directors of the Foundation shall promulgate a policy, consistent with these Rules, which shall state the criteria to be met by an organization to qualify for a grant. Such criteria shall provide, among other criteria to be specified by the Board of Directors, that the organization must be exempt from taxation under Section 501 (c) (3) of the United States Internal Revenue Code, as amended, or corresponding provisions of any subsequent United States Internal Revenue law or laws, have as a primary purpose the delivery of legal services to low-income persons pursuant to income and type of case criteria acceptable to the Board of Directors, be current in all filings required to be made by it with any governmental authority, maintain open records and conduct open meetings (subject to reasonable limitations for an organization of its type), be an equal employment opportunity employer, and be able to demonstrate that it can utilize any funds granted to it in a manner consistent with these Rules and policies adopted by the Board of Directors of the Foundation. Nothing herein shall be deemed to impair any attorney-client relationship.

10. Persons Eligible to Benefit from Grants.

    Organizations receiving grants of funds from the Foundation shall use such funds to provide legal services to individual indigent persons or client groups, associations, and nonprofit organizations. Prior to the making of its first grant, and at least annually thereafter, the Board of Directors of the Foundation shall adopt criteria relating to income, assets and liabilities defining the indigent persons eligible to benefit from Foundation grants. In representing a client group, association, or nonprofit organization, the grantee must comply with all of the other provisions of these Rules and is subject to all of the prohibitions contained herein. A client group, association, or nonprofit organization is eligible if it is (1) primarily composed of individual indigent persons; or (2) the organization's primary purpose is in furtherance of the interests of indigent persons and is seeking legal assistance on a matter relating to such purpose.

11. Criteria for Grants.

    Prior to making its first grant of funds, the Board of Directors of the Foundation shall promulgate a policy, consistent with these Rules, which shall state the criteria to be made for a grant from the Foundation. Such criteria shall provide, among other criteria to be specified by the Board of Directors, that the funds granted by the Foundation may not be used to duplicate a service already funded by another entity or in place of other funds available for the same purpose.

12. Use of Funds Limited to Cases Which Cannot Generate Fees.

    Funds granted by the Foundation to organizations to provide legal services to the indigent in civil matters may not be used for any case or matter that, if undertaken on behalf of an indigent person by an attorney in private practice, might reasonably be expected to result in payment of a fee for legal services from an award to a client from public funds, or from the opposing party.

13. Exception to Rule 12.

    The provisions of Rule 12 shall not be applicable in any case where the organization receiving funds granted by the Foundation determines in good faith that the indigent person

seeking legal assistance has made reasonable efforts to obtain the services of an attorney in private practice for the particular matter (including contacting attorneys in private practice in the county of residence of the indigent person who normally accept cases of a similar nature), and has been unable to obtain such services because the potential fee is inadequate, is likely to be uncollectible, would substantially consume any recovery by the client, or because of any other reason which the organization, acting in good faith, believes prevents the client from obtaining the services of a private attorney.

14. Funding of Certain Suits and Activities Not Permitted.

    No funds shall be granted by the Foundation to directly fund class action suits, lawsuits against governmental entities, or lobbying for or against any candidate or issue. Provided, however, that funds may be granted to finance suits against governmental entities on behalf of individuals in order to secure entitlement to benefits such as, but not limited to, social security, aid to families with dependent children, food stamps, special education for the handicapped, Medicare, Medicaid, subsidized or public housing, or other economic, shelter or medical benefits provided directly to indigent individuals.

15. Records and Reports of Grantees.

    The Foundation shall require, as a condition to the granting of funds to any organization or program, that adequate provision be made for reports to the Foundation as to the actual use of the funds so granted and for audit of such reports. Each such organization or program receiving funds from the Foundation shall keep its financial records in accordance with generally accepted accounting principles for organizations of its type and shall furnish reports to the Foundation in such form and containing such information as shall be reasonably requested pursuant to policies adopted by the Board of Directors of the Foundation.

16. Cessation of Funding.

    The Foundation may cease funding an organization which fails to act in accordance with the requirements of the Order of the Supreme Court of Texas creating the Program, these Rules or the policies adopted by the Board of Directors of the Foundation as provided in these Rules. The Board of Directors of the Foundation shall adopt appropriate procedures to be followed when it has been determined to cease funding an organization, including reasonable notice to the organization involved, an opportunity to correct any deficiency (if reasonably possible to do so) and a hearing before the Board of Directors.

17. Administrative Costs of Foundation.

    The Foundation may expend funds for administrative costs of the Program, including any costs incurred after April 30, 1984, and may provide a reasonable reserve for administrative costs.

18. Records of the Foundation.

    The records of the Foundation, including applications for funds, whether or not granted, shall be open for public inspection at reasonable times and subject to reasonable restrictions dictated by the operational needs of the Foundation. The Foundation shall maintain its books of account in accordance with generally accepted accounting principles for organizations of its type and shall maintain written minutes of meetings of its Board of Directors and committees. It shall also maintain such other records as are within reasonable policies established by its Board of Directors.

19. Initial Distribution of Funds by the Foundation.

    The initial distribution of funds under the Program shall be made at a time when, in the determination of the Board of Directors of the Foundation, there are sufficient funds to provide an adequate distribution.

20. Other Interest-Bearing Accounts.

    Participating in the Program does not prohibit an attorney, law firm or professional corporation engaged in the practice of law from establishing one or more interest-bearing accounts or other investments permitted by the Texas Code of Professional Responsibility (Article X, Section 9, State Bar Rules) with the interest or dividends earned on the accounts or investments payable as directed by clients for whom funds are not deposited in accordance with these Rules.

21. Compliance with Code of Professional Responsibility.

    Neither the Foundation nor any organization or program to which it grants funds may take an action or require an attorney to take an action in violation of the Code of Professional Responsibility (Article X, Section 9, State Bar Rules) or in violation of any other code of professional responsibility adopted by the state for attorneys.

22. Attorney Liability.

    Nothing in these Rules affects the obligations of attorneys, law firms or professional corporations engaged in the practice of law with respect to client funds other than client funds reasonably determined to be "nominal in amount" or reasonably anticipated to be held for a "short period of time," as those terms are defined by these Rules. An attorney, law firm or professional corporation is not liable in determining which funds are nominal in amount or on deposit for a short period of time if the determination is made in good faith in accordance with these Rules.

23. Compliance.

    (a) On or after March 1 of each year, all attorneys licensed by the Supreme Court of Texas shall report IOLTA compliance in a manner to be prescribed by the Texas Access to Justice Foundation and the State Bar of Texas. Such compliance statements may require such information as is deemed reasonably necessary by the Foundation and the State Bar of Texas.

    (b) An annual compliance statement must be completed and returned to the Foundation by the date stated on the compliance statement. If the compliance statement is timely filed, indicating compliance, there will be no acknowledgement. The presumption of compliance after timely filing shall obtain, absent some evidence to the contrary.

    (c) Should a compliance statement filed by an attorney fail to evidence compliance, the Foundation shall contact the attorney and attempt to resolve administratively the non-compliance.

    (d) The Foundation shall furnish annually to the State Bar of Texas a list of all attorneys licensed by the Supreme Court of Texas (i) who have not timely filed a compliance statement or (ii) as to whom the Foundation has been unable administratively to resolve any impediment to the proper filing of a compliance statement. The State Bar of Texas shall send to each person so reported, by certified mail, return receipt requested, a non-compliance notice. Should the attorney fail or refuse to file the compliance statement within thirty (30) days of such notice, the State Bar of Texas shall so notify the Clerk of The Supreme Court of


Texas, and the attorney shall be immediately suspended as an attorney licensed to practice law in the State of Texas until a compliance statement is filed.

24. Review and Appeal.

(a) An attorney may file a written request based upon good cause for exemption from compliance with any of the requirements of these Rules, an extension of time for compliance, an extension of time to comply with a deficiency notice, or an extension of time to file an annual compliance statement. Such request shall be reviewed and determined by a Committee established by the State Bar or by such committee as the chairperson may, from time to time, designate. The attorney shall be promptly notified of the decision by the Committee.

(b) "Good cause" shall exist when an attorney is unable to comply with this Article because of extraordinary hardship or extenuating circumstances which were not willful on the part of the attorney and were beyond his or her control.

(c) Should the decision of the Committee be adverse to the attorney, the attorney may request the Board of Directors of the State Bar to review the decision by making such request in writing to the Executive Director of the State Bar within thirty days of notification of the decision of the Committee. The Chairman of the Board may appoint a committee of the Board to review the decision of the Committee and make a recommendation to the Board. The decision shall be made by the Board.

(d) Should the decision of the Board be adverse to the attorney, the attorney may appeal such decision by filing suit within thirty days of notification of the Board's action, failing which the decision of the Board shall be final. Such suit shall be brought against the State Bar, and shall be filed in a district court in Travis County, Texas. Trial shall be de novo, but the burden of proof shall be on the attorney appealing, the burden shall be by a preponderance of the evidence, and the attorney shall prove the existence of "good cause" as defined herein. The trial court shall proceed to hear and determine the issue without a jury. Either party shall have a right to appeal.

(e) Any suspension of an attorney shall be vacated during the administrative review process and while any suit filed is pending.

25. Return to Former Status.

Any attorney whose license to practice law has been suspended under the terms of these Rules who after the date of suspension files a report with the Foundation showing compliance shall be entitled to have such suspension promptly terminated and be returned to former status. Return to former status shall be retroactive to the inception of suspension, but shall not affect any proceeding for discipline of the member for professional misconduct. The State Bar shall promptly notify the Clerk that an attorney formerly suspended under these Rules has now complied with these Rules.

26. Confidentiality.

The files, records, proceedings, as they relate to the compliance or noncompliance of any attorney with the requirements of these Rules, shall be confidential and shall not be disclosed except upon consent of the attorney affected, as directed in the course of judicial proceeding by a court of competent jurisdiction or to the State Bar's Office of Chief Disciplinary Counsel.