IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| CHRIS PETTIT & ASSOCIATES, P.C. § | LEAD CASE NO. 22-50591-CAG |
| CHRISTOPHER JOHN PETTIT, § | SECOND CASE No. 22-50592-CAG |
| § | |
| Jointly Administered Debtors. § | Chapter 11 |
| § | |
| § | (Jointly Administered Under Case |
| § | No. 22-50591) |
| | |
| JAMES C. ARMSTRONG, et al. § | |
| § | CIVIL ACTION NO. SA-24-CV-177-FB |
| Plaintiffs, § | (Adversary No. 23-05088-CAG) |
| § | |
| VS. § | |
| § | |
| WELLS FARGO BANK, N.A.; WELLS § | |
| FARGO BANK WEST; AMERICAN § | |
| BANK, N.A., d/b/a TEXSTAR NATIONAL § | |
| BANK a/k/a TEXSTAR BANK; TEXAS § | |
| PARTNERS BANK d/b/a THE BANK OF § | |
| SAN ANTONIO; WINTER PARK § | |
| NATIONAL BANK; and FROST BANK, § | |
| § | |
| Defendants. § | |
| § | |

**DEFENDANT AMERICAN BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6) AND 9(B)**

Defendant American Bank, N.A. moves to dismiss the claims pleaded by Plaintiffs in their Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 9(b). In support, American Bank states as follows:

## INTRODUCTION

Two hundred former clients of disgraced attorney Christopher Pettit ("Pettit") and his law firm Chris Pettit & Associates, P.C. ("CP&A") allege that six banks knowingly participated in Pettit's and CP&A's breach of their fiduciary duties related to funds deposited in eight Interest on Lawyers' Trust Accounts ("IOLTA") over a fourteen-year period causing $200 million in damages. For such serious allegations about a complex scheme, one would expect the complaint to detail, at a minimum, basic facts about things like each client's relationship with CP&A, how each client's money ended up in CP&A's various IOLTA accounts, how CP&A and Pettit misused each client's money, and most importantly, how the banks knew about all of this and participated anyway. But not here.

Instead, Plaintiffs lump themselves and the banks together, alleging in one conclusory stroke that CP&A and Pettit breached their fiduciary relationships with all the Plaintiffs, and the banks knowingly participated. These group, conclusory allegations fail to state a claim against all the defendant banks. But they are particularly problematic as to American Bank, which Plaintiffs' Third Amended Complaint alleges held CP&A's IOLTA account for just six months. There is little chance that all two hundred Plaintiffs have claims against American Bank, yet Plaintiffs did no work to plead sufficient facts segregating American Bank's alleged wrongdoing from the other banks. Plaintiffs fail to state a claim under Rule 12(b)(6) and Rule 9(b), and the Court should dismiss the Third Amended Complaint.

## FACTUAL BACKGROUND

Two hundred Plaintiffs allege that they are former clients of attorney Christopher Pettit and his law firm, CP&A (collectively, "Pettit"). TAC ¶¶ 1.01–1.200, 11. Two years ago, Christopher

---

Pettit resigned from the State Bar of Texas instead of discipline, and CP&A no longer exists. *Id.* ¶ 11.

Plaintiffs' allegations in this lawsuit concern Pettit's alleged misuse of funds in various IOLTA accounts. An IOLTA account is a bank account in which an attorney places nominal or short-term funds belonging to the attorney's clients. *Id.* ¶ 11. These accounts are commonly used to hold client monies in the form of retainers to be disbursed to attorneys as work is performed or client settlement funds that are used to pay attorney contingency fees. The Texas IOLTA program is governed by Article XI of the Texas State Bar Rules and by the Supreme Court of Texas's Rules Governing the Operation of the Texas Access to Justice Foundation. These rules state that an attorney or law firm "receiving in the course of the practice of law in this state . . . client funds that are nominal in amount or are reasonably anticipated to be held for a short period of time" must "establish and maintain a separate interest-bearing demand account at a financial institution" and "deposit in the account all those client funds." Tex. State Bar R. art. XI, § 5(A), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A; *accord* Rule 4 Governing Operation of Tex. Access to Justice Found. ("<u>TAJF R. 4</u>").

The State Bar Rules trust the attorney or law firm to determine in good faith if client funds meet the criteria to include in the IOLTA program and for administering the IOLTA account. *See id.* R. 6, 22; Tex. State Bar R. art. XI, § 7. The Supreme Court of Texas has emphasized the IOLTA program does not displace other laws governing the relations between all the parties: "Nothing in this or any of these Rules prohibits the deposit of client funds into a general account or changes the legal relationship between depositor and financial institution from that established by contract or by applicable state and federal law."[1] TAJF R. 4.

---

[1] The Texas Disciplinary Rules of Professional Conduct signal that, in appropriate circumstances, an IOLTA account may contain funds in which the attorney claims an interest such as "client

As it relates to the banks, Plaintiffs allege that from January 2008 to August 2022, Pettit had eight IOLTA accounts at five banks: one at Frost Bank from January 2008 to May 2021; two at Texas Partners Bank from January 2017 to July 2021; three at Wells Fargo Bank, N.A. from various dates in 2017 to August 2022; one at Winter Park National Bank from April 2021 to January 2022; and as relevant here, one at American Bank from October 2021 to March 2022. *Id.* ¶ 13. Except for one Wells Fargo IOLTA account registered in New Mexico, the IOLTA accounts were part of the Texas IOLTA program. *Id.* ¶¶ 15, 17. Pettit was the sole signatory on the accounts. *Id.* ¶ 14.

Plaintiffs allege "on information and belief" that the banks allowed Pettit and CP&A "to routinely transfer trust funds to the firm's operating account;" "to routinely transfer trust funds to Pettit's personal bank account;" "to routinely use trust funds to pay personal expenses, including credit card and PayPal expenses;" "to routinely make large cash deposits into and cash withdrawals from the trust accounts;" and "to use trust funds to routinely pay third-party creditors." *Id.* ¶¶ 19–23.

Christopher Pettit and CP&A filed voluntary petitions for bankruptcy under Chapter 11 in June 2022. *See* Bankr. Pet., *In re Chris Pettit & Associates P.C., Christopher John Pettit*, No. 5:22-BK-50591, Doc. 1 (Bankr W.D. Tex. 2022). Many Plaintiffs filed proofs of claim in the bankruptcy proceeding. During the proceeding, Eric Terry, the Chapter 11 trustee for the estate of CP&A, two individuals, and a living trust instituted an adversary proceeding against Wells Fargo Bank, N.A., Wells Fargo National Bank West, and Christopher Pettit, asserting various causes of action based on Pettit's alleged misuse of IOLTA accounts at Wells Fargo. *See* Compl., *Verstuyft v. Wells Fargo*

---

monies that constitute a prepayment of a fee and that belong[] to the client until the services are rendered," so long as the funds are "kept separate by the lawyer until there is an accounting and severance of their interest." Tex. Disciplinary Rules Prof'l Conduct R. 1.14(c), cmt. 2, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A.

---

*Bank, N.A. (In re Chris Pettit & Assocs., P.C.)*, Adv. No. 23-5039-CAG (Bankr. W.D. Tex. May 2, 2023), ECF No. 930.

A few months later, Plaintiffs sued the six defendant banks in Bexar County District Court. American Bank removed the case to the Bankruptcy Court. Plaintiffs' live pleading in this case is now the Third Amended Complaint ("TAC"). *See* ECF No. 25. The TAC brings one claim against the six defendant banks for knowing participation in a breach of fiduciary duty. *See* TAC ¶¶ 24–29. Plaintiffs allege that the defendant banks "knowingly assisted and participated with Pettit and his law firm in breaching their fiduciary duties" by misusing IOLTA funds. TAC ¶¶ 26–27. At the least, Plaintiffs allege that the defendant banks "should have known" that Pettit was breaching his fiduciary duties to Plaintiffs because of the "numerous red flags." TAC ¶ 27.

Since the filing of the instant lawsuit by the Plaintiffs, Eric Terry, Chapter 11 Trustee for the estate of CP&A, has filed additional lawsuits against the banks. In one lawsuit, Terry alleged that Frost Bank was the alleged recipient of various fraudulent transfers, totaling more than $1.0 million from Pettit's "illegal activities across his Frost Accounts." Pl.'s First Am. Compl., *Terry v. Frost Bank*, ECF No. 13, Civil Action No. 24-04034 (Bankr. W.D. Tex. Aug. 12, 2024). The Bankruptcy Court concluded that Terry could not state a claim based on the facts alleged and dismissed his claims against Frost Bank with prejudice. *See* Order Granting Frost Bank's Mot. to Dismiss First Am. Compl. With Prejudice, *id.*, Doc. 49. Here, too, Plaintiffs have not sufficiently alleged, and cannot hold, the Banks liable for Pettit's misdeeds.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), a complaint must have enough facts to "state a claim to relief that is plausible

on its face." *Robinson v. Midland County*, 80 F.4th 704, 709 (5th Cir. 2023). Facial plausibility requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (2009) (cleaned up). Although the Court must accept well-pleaded facts as true, it "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020); *see also Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.") (cleaned up).

Under Rule 9(b), a party alleging "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that a plaintiff allege the "who, what, when, where, and how of the alleged fraud" with specificity. *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (cleaned up). A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

## ARGUMENT

Plaintiffs' Third Amended Complaint violates all the hallmarks of a well-pleaded complaint. Lacking any factual enhancement, Plaintiffs allege in conclusory terms that they had fiduciary relationships with Pettit, that American Bank knew about those fiduciary relationships, and

that American Bank knowingly participated in Pettit's breaches of them. At the same time, they rely on impermissible group pleading, ignoring that not all Plaintiffs have claims against every bank because each Plaintiff's funds were deposited in different banks at different times, and the banks' knowledge would be based on this different conduct. At bottom, allowing this complaint to proceed would reduce Rule 12(b)(6)'s plausibility requirement and Rule 9(b)'s particularity requirement to be optional. American Bank's motion to dismiss should be granted.

I.  **The Court should dismiss Plaintiffs' knowing participation in breach of fiduciary duty claim under Rule 12(b)(6) because Plaintiffs fail to state a plausible claim.**

Recognizing that a bank generally owes no duty to noncustomers under Texas law, *see, e.g.*, *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) ("Geneally, a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship."), Plaintiffs do not allege that American Bank breached its fiduciary duty to Plaintiffs. Rather, they allege that American Bank knowingly took part in *Pettit's* breach of fiduciary duties. *See* TAC ¶¶ 24–29. To state a claim for knowing participation in a breach of fiduciary duty, a plaintiff must allege: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018). The defendant must have "actual knowledge" of the fiduciary relationship and the third party's breach. *Rotstain v. Trustmark Nat'l Bank*, 2022 WL 179609, at *12 (N.D. Tex. Jan. 20, 2022) (collecting cases); *LMP Austin English Aire, LLC v. Lafayette English Apartments, LP*, 654 S.W.3d 265, 287 (Tex. App.—Austin 2022, no pet.). "[A] less culpable mental state, such as constructive knowledge, will not suffice." *Rotstain*, 2022 WL 179609, at *12. Because Plaintiffs fail to plausibly allege any element of this claim, the TAC should be dismissed.

      A.      **Plaintiffs fail to plausibly allege that they had fiduciary relationships with Pettit.**

Plaintiffs fail to plausibly allege that they had fiduciary relationships with Pettit. *See D'Oofrio*, 888 F.3d at 216. Texas recognizes two types of fiduciary relationships. "The first is a formal fiduciary relationship," such as "the relationship of an attorney-client, principal-agent, or trustee-beneficiary relationship." *Gregan v. Kelly*, 355 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The second is an informal fiduciary relationship—that is, a confidential relationship "where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one." *Id.* "The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

Plaintiffs allege that fiduciary relationships existed between each of the two hundred Plaintiffs and Christopher Pettit and his law firm because they "acted as attorneys and financial counselors for the Plaintiffs with respect to certain legal and financial matters, including estate planning, personal injury claims, Section 1031 exchanges, and investment decisions, among others, and thereby assumed a special and confidential relationship with them." TAC ¶ 24; *see also id.* ¶ 25 ("The relationship between the parties is recognized as fiduciary in nature under Texas and New Mexico law."). These "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (cleaned up).

To be sure, an attorney-client relationship can be fiduciary. *Gergan*, 355 S.W.3d at 227. But Plaintiffs do not allege who had an attorney-client relationship with Pettit rather than a relationship based on "financial counsel[ing]." TAC ¶ 24. This information is key. An attorney can deposit only "client funds" that are "receiv[ed] in the course of the *practice of law*" into an IOLTA account. TAJF R. 4 (emphasis added); *see also* Tex. State Bar R. art. XI, § 5(A). In other words,

those Plaintiffs that used Pettit as a financial counselor rather than as an attorney never had their money deposited into an IOLTA account at all.

Even putting this inconvenient fact aside, the Court cannot infer that Christopher Pettit acted in a fiduciary capacity every time he served as a financial counselor: "[B]ecause the duty owed is contingent on the nature of the fiduciary relationship, the plaintiff must plead some facts as to the nature of the relationship to state a plausible claim that that a fiduciary duty has been breached." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019); *see, e.g.*, *In re e2 Commc'ns, Inc.*, 354 B.R. 368, 393 (Bankr. N.D. Tex. 2006) (concluding that "the financial advisor-client relationship between Stephens and e2 did not give rise to a fiduciary relationship"). Plaintiffs allege no facts about Pettit's financial counseling relationship with each Plaintiff or what services Pettit performed for each Plaintiff such that the Court can infer that a fiduciary relationship existed with every Plaintiff and how long those relationships lasted. Indeed, the default is that "[f]inancial advisors generally do not stand in a fiduciary relationship with their clients." *Cox Operating L.L.C. v. Wells Fargo Bank, N.A.*, 2020 WL 13228364, at *3 (S.D. Tex. June 16, 2020). Without even one well-pleaded fact, Plaintiffs fail to plausibly allege that fiduciary relationships existed with Pettit.

### B. Plaintiffs fail to plausibly allege that American Bank had actual knowledge of fiduciary relationships between Plaintiffs and Pettit.

Plaintiffs also fail to plausibly allege that American Bank had actual knowledge of the fiduciary relationships between Plaintiffs and Pettit. *See D'Onofrio*, 888 F.3d at 216. To support this element, Plaintiffs allege that the defendant banks had "full knowledge of the existence of a fiduciary duty existing between Pettit and his law firm on the one hand and the Plaintiffs on the other." TAC ¶ 27. That's it. Yet this "[t]hreadbare recital[]" of an element of Plaintiffs' cause of action "do[es] not suffice." *Iqbal*, 556 U.S. at 678.

Plaintiffs allege no facts "giv[ing] rise to a plausible inference" that American Bank had actual knowledge that Plaintiffs and Pettit were in fiduciary relationships. *Id.* at 682. To the contrary, Plaintiffs admitted in a document filed with the Court that the defendant banks *do not know* "the specific identity of each individual whose funds had been deposited" in Pettit's IOLTA accounts. ECF No. 33 at 8. In short, American Bank cannot have actual knowledge that Plaintiffs were in fiduciary relationships with Pettit when it did not even know who they were.

C. **Plaintiffs fail to plausibly allege that American Bank had actual knowledge it was taking part in Pettit's breach of fiduciary duties.**

Finally, Plaintiffs fail to plausibly allege that American Bank had actual knowledge that it was participating in Pettit's breach of fiduciary duties. *See D'Onofrio*, 888 F.3d at 216. Plaintiffs allege that Pettit, "with the knowing assistance of the Defendants," breached their fiduciary duty to Plaintiffs

> (i) by paying personal and operating expenses from the IOLTA accounts, (ii) by paying Pettit's monthly home mortgage expenses from the IOLTA accounts, (iii) by depositing cash into and withdrawing cash from the IOLTA accounts, (iv) by using the IOLTA accounts to pay Pettit's credit card bills and other personal expenses, (v) by transferring funds from the IOLTA accounts to Pettit's personal banking account, (vi) by transferring funds from the IOLTA accounts to the operating account of Chris Pettit and Associates, and (vii) by withdrawing 1031 exchange proceeds from the IOLTA accounts for Pettit's personal use.

TAC ¶ 26.

The Court need not accept these "legal conclusion[s] couched as [] factual allegation[s]" as true. *Bevis v. City of New Orleans*, 686 F.3d 277, 279 (5th Cir. 2012). Again, this case involves two hundred Plaintiffs and eight IOLTA account at five banks from January 2008 to August 2022. TAC ¶ 13. During this 176-month period, Pettit's IOLTA account with American Bank was open for only *six* months—October 2021 to March 2022.[2] *Id.* The odds that all two hundred Plaintiffs

---

[2] For purposes of this Motion to Dismiss, American Bank is treating Plaintiffs' allegations as true. However, the account was not actually opened until November 2021.

had funds deposited and misused in Pettit's American Bank IOLTA account during this six-month period are zero. Yet *every* Plaintiff brings a claim against American Bank for knowingly participating in Pettit's alleged breach of fiduciary duties. To bring a claim against American Bank, Plaintiffs must plead "sufficient facts" to connect their funds to transactions in Pettit's IOLTA account at American Bank between October 2021 and March 2022. *Iqbal*, 556 U.S. at 687. They do not come close.

Plaintiffs do not allege when they were Pettit's clients or when they gave funds to Pettit such that the Court can draw the "reasonable inference" that their funds were deposited into the *American Bank* IOLTA account. *Iqbal*, 556 U.S. at 663. Plaintiffs also allege no facts from which the Court could infer whose funds were deposited in the American Bank IOLTA account rather than the three or four other IOLTA accounts open during the same period. TAC ¶ 13. These facts are dispositive. If the Estate of Rhonda Mylnar's funds were deposited in, for example, the Frost Bank IOLTA account ten years earlier in January 2012, this conduct could not give rise to Plaintiff Richard Mylnar's cause of action against American Bank. TAC ¶ 1.10. Yet Richard Mylnar brings a cause of action against every bank as if American Bank is liable for conduct that occurred at other banks ten years earlier. For this reason, that "the accounts in question were IOLTA accounts" makes no difference. TAC ¶ 15. Rule 9 requires particularity in pleading to assert those persons to whom the funds deposited to the American Bank IOLTA account. The only Plaintiffs that might have a cause of action against American Bank are those "person[s] to whom [the American Bank IOLTA funds] belonged." *Id.*

And even if Plaintiffs had matched up each Plaintiff's money with transactions in the American Bank IOLTA account, Plaintiffs allege no facts showing that American Bank had "actual knowledge" that Pettit was misusing IOLTA funds much less that American Bank was participating

in those breaches. *Rotstain*, 2022 WL 179609, at *12; *see, e.g.*, *Rosemann v. St. Louis Bank*, 858 F.3d 488, 495 (8th Cir. 2017) (granting summary judgment to bank on similar claims when the plaintiff failed to show actual knowledge because "[t]he multiple-source nature of the IOLTA precluded St. Louis Bank and its employees from knowing whether transactions in the account involved fiduciary funds"). At most, Plaintiffs allege that there were "red flags." TAC ¶ 27. But Plaintiffs allege no facts showing that American Bank knew about these "red flags" either. *Id.* And besides, "constructive knowledge" does not give rise to a knowing participation in a breach of fiduciary duty claim. *Rotstain*, 2022 WL 179609, at *12; *LMP Austin*, 654 S.W.3d at 287.

In the end, Plaintiffs' claim fails across the board. They plead almost no non-conclusory facts let alone facts that allow the Court "to draw the reasonable inference that [American Bank] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Stripped of the conclusory, unsupported allegations, Plaintiffs' TAC amounts to "an unadorned, the-defendant-unlawfully-harmed-me accusation" insufficient to support a plausible claim for relief. *Id.* at 678. The Court should dismiss the TAC.

**II.     The Court should dismiss the TAC because Plaintiffs fail to meet Rule 9(b)'s heightened pleading requirement.**

Even if Plaintiffs somehow stated a plausible claim under Rule 12(b)(6), Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading requirement. Rule 9(b) applies to fraud claims and claims that "sound[] in fraud." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024) (cleaned up); *see also Lone Star Ladies Inv. Club v. Schlotzky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *Transp. Mgmt. Servs., Inc. v. Hiscox Ins. Co.*, 716 F. Supp. 3d 486, 490 (W.D. Tex. 2024) ("[C]laims of fraud and claims sounding in fraud implicate Rule 9(b)'s heightened pleading standard."). Just as a breach of fiduciary claim based on fraudulent conduct is subject to

Rule 9(b), a knowing participation in a breach of fiduciary duty claim sounding in fraud is too. *See, e.g.*, *Brown v. Bilek*, 401 F. App'x 889, 893–94 (5th Cir. 2010) (applying Rule 9(b) to breach of fiduciary duty claim "predicated on fraud"); *Litson-Gruenber v. JPMorgan Chase & Co.*, 2009 WL 4884426, at *4 (N.D. Tex. Dec. 16, 2009) (applying Rule 9(b) to breach of fiduciary duty claim "premised on allegations of fraud"); *Legendary Lightning Grp., Inc. v. Optigenex, Inc.*, 4:25-cv-LG-CMC, 2015 WL 3942946 (E.D. Tex. June 26, 2015) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.") (internal quotations omitted).

Here, by their admission, Plaintiffs' claim sounds in fraud. They allege that "due to the *fraudulent nature* of the Defendants' conduct, Plaintiffs are entitled to exemplary damages under TEX. CIV. PRAC. & REM. CODE §41.003." TAC ¶ 35 (emphasis added); *see also* Tex. Civ. Prac. & Rem. Code § 41.003(a)(1) (allowing exemplary damages if "fraud" caused the harm). On top of this, Pettit's alleged underlying misconduct involves fraud—stealing and misusing client funds for his pleasure.[3]

Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard. At its core, Plaintiffs rely on impermissible group pleading to support their claim. Because fraud claims must be plead with specificity, "[t]he Fifth Circuit has unequivocally rejected the idea that 'group pleading' suffices under Rule 9(b)." *Skinny Kid Prods., LLC v. Arthur J. Gallagher & Co.*, 2021 WL 6750915, at *6 (W.D. Tex. Mar. 25, 2021) (citation omitted). Put simply, "[i]t is impermissible to make general allegations that lump all defendants together; rather, the complaint must segregate the alleged

---

[3] After all, Pettit was convicted for wire fraud and money laundering. *See* Press Release, U.S. Attorney's Office, Former San Antonio Lawyer Sentenced to 50 Years for Wire Fraud, Money Laundering (Feb. 21, 2024)*,* https://www.justice.gov/usao-wdtx/pr/former-san-antonio-lawyer-sentenced-50-years-wire-fraud-money-laundering.

wrongdoing of one from another." *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 471 (N.D. Tex. 2012); *see also Schnurr v. Preston*, 2018 WL 8584292, at *4 (W.D. Tex. May 29, 2018) ("Group pleading fails to satisfy the requirement that the who, what, where, why, and when of the fraud be specified.") (citation omitted).

For all that, Plaintiffs do not differentiate between American Bank and the other "Defendants" or "Defendant Banks." TAC ¶¶ 15–23; 26–35. Plaintiffs fail to identify a single Plaintiff whose money was deposited into the American Bank IOLTA account, a banking transaction involving the American Bank IOLTA account, or any knowledge specific to American Bank about Pettit or Plaintiffs. Rather, they lump the defendant banks together as if each bank committed the same wrongs against each Plaintiff. Rule 9(b) demands more. Plaintiffs "must segregate the alleged wrongdoing" of one bank from another, which they made no effort to do. *Parkcentral Glob.*, 884 F. Supp. 2d at 471. On this basis alone, the Court should dismiss the TAC.

## **CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' Third Amended Complaint with prejudice and grant any other relief that the Court considers appropriate.

Dated: January 27, 2025                                             Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Lauren E. Hayes*
LYNN BUTLER
State Bar No. 03527350
lynn.butler@huschblackwell.com
LAUREN E. HAYES
State Bar No. 24081961
lauren.hayes@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: (512) 479-1163
Fax: (512) 479-1101

*ATTORNEYS FOR DEFENDANT
AMERICAN BANK, N.A.*

## CERTIFICATE OF CONFERENCE

I certify that I complied with the Standing Order in Civil Cases Assigned to Judge Fred Biery by informing Plaintiffs' counsel of the basis of this Motion and informed Plaintiffs of their right to amend pursuant to the same. Plaintiffs have not filed an Advisory of their intent to amend the complaint or otherwise filed an amended complaint. American Bank thus proceeds with the filing of this motion to dismiss.

*/s/ Lauren E. Hayes*
Lauren E. Hayes

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Motion was served on all counsel of record via ECF on January 27, 2025.

*/s/ Lauren E. Hayes*
Lauren E. Hayes